IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01486–RBJ–KMT

VENTURA, INC.,
JOHN R. BUTLER,
KEITH WEGEN,
JJJ FOUNDATION, INC., and
TRIANGLE RIVER 401, LLC,

      Plaintiffs,

v.

SHARKANSKY, LLP,
SCOTT ESTABROOKS,
HOLLAND & KNIGHT, LLP, and
RICHARD J. HINDLIAN,

      Defendants.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Holland & Knight LLP's and Richard J. Hindlian's Motion to Dismiss Complaint" (Doc. No. 43, filed Sept. 13, 2013 [Mot. Dismiss]) and "Plaintiffs' Motion for Leave to Supplement Response and Brief in Opposition to Holland & Knight LLP's and Richard J. Hindlian's Motion to Dismiss" (Doc. No. 76, filed Dec. 17, 2013 [Mot. Suppl.]).  For the following reasons, it is ORDERED that the Motion to Supplement is GRANTED and RECOMMENDED that the Motion to Dismiss be GRANTED.

## FACTUAL BACKGROUND

The following factual background is derived from Plaintiffs' "Amended Complaint and Jury Demand" (Doc. No. 8 [Am. Compl.]) and the parties' briefing with respect to this Recommendation.  At the outset, the court notes that the 67-page Amended Complaint includes factual allegations as to all of the defendants, including several who have since been dismissed. For sake of brevity and focus, this background is limited to the facts pertinent to Plaintiffs' claims against Defendants Holland & Knight LLP ("Holland & Knight") and Richard Hindlian ("Hindlian").

Plaintiff alleges that Holland & Knight and Hindlian were complicit in a scheme by Inofin, Inc., a Massachusetts automotive finance company, to materially mislead investors, including Plaintiffs, as to Inofin's financial standing and worth.  More specifically, despite the fact that Inofin had a negative net worth and a progressively deteriorating financial condition, Inofin and its principal officers allegedly continued to offer and sell Inofin securities, knowingly or recklessly misrepresenting to investors that Inofin was a profitable business and a sound investment.  (Am. Compl ¶ 3.)

Holland & Knight, and its predecessor firm, Sherbourne, Powers & Needham, have been Inofin's outside counsel since the early 1990's.[1]  (*Id.* ¶ 101.)  In August 2006, Inofin's President, Michael Cuomo, approached and retained Holland & Knight to advise Inofin regarding its license from the Massachusetts Division of Banks.  (*Id.* ¶ 102.)  Cuomo conveyed to Hindlian, a

---

[1] Plaintiff's admit that there was a hiatus of several years prior to 2006 when neither SPN or Holland & Knight acted as Inofin's counsel. (Am. Compl. ¶ 101.)

partner in Holland & Knight's Boston office, that the Division of Banks license was essential to Infofin's ability to conduct its business.  (*Id.*)

At or around the time Holland & Knight was retained by Inofin, Hindlian learned from Cuomo that Inofin effectively had a negative net worth.[2]  (*See id.* ¶¶ 102-103.)  Hindlian began researching regulation pertinent to the Division of Banks licensing process and spoke with Division of Banks personnel.  (*Id.* ¶ 103.)  Based on this research, as well as prior experience, Hindlian allegedly recognized that Inofin's negative net worth presented a clear risk that it would lose its license from the Division of Banks.  (*Id.*)  Nevertheless, Hindlian allegedly never advised Inofin to disclose its negative net worth to investors or the risk this posed to Inofin's license with the Division of Banks.  (*Id.*)

In late 2008, Inofin was attempting to raise additional financing to meet its needs for additional cash.  (*Id.* ¶ 107.)  Hindlian advised Inofin that if it were to sell additional notes to investors, it should do so in the form of a private placement that would be exempt from registration under SEC Regulation D.  (*Id.*)  To qualify for this registration exemption, a private placement memorandum ("PPM") that included proper disclosures to investors was required.  (*Id.* ¶ 108.)

Around that same time, an Inofin investor, Robert Downing, also approached Inofin management regarding the need to distribute a PPM to investors.  Mr. Downing apparently recognized that SEC regulations required a PPM for Inofin's investment scheme.  (*Id.* ¶ 153.)

---

[2] That negative net worth was based on the fact that several Inofin subsidiaries had been operating at a loss and were unable to meet their obligations on loans received from Inofin.  (*See* Am. Compl. ¶¶ 34-42.)

On or around January 31, 2009, Hindlian, with Inofin's authorization, drafted a PPM for an offering of up to $5 million in notes to be sold to investors.  (*Id.* ¶ 109-108.)  However, even though Hindlian allegedly knew that Inofin was insolvent, the PPM drafted by Hindlian did not disclose Inofin's negative net worth or its association with the two related entities which were the source of its negative net worth.  (*Id.* ¶ 111.)

After receiving the PPM from Hindlian, Cuomo instructed Hindlian to stop work on the PPM because Inofin had elected to raise money only from "family and friends."  (*Id.* ¶ 113.) Plaintiffs allege that Hindlian should have known that Inofin's potential investors were not limited to "friends and family" as Inofin had upwards of 275 investors and was actively using and paying promoters to seek out investors.  (*Id.* ¶ 114.)  In response to Mr. Downing's inquiry about the need for a PPM, Inofin's CEO, Kevin Mann, and Cuomo, represented to investors, including Plaintiffs, that Holland & Knight advised that a PPM was not required.  (*Id.* ¶ 156.)

In the summer of 2009, Hindlian authored a May 22, 2009 memorandum to Inofin, in which the first itemized topic was "[h]iding losses and financing needs."  (*Id.* ¶ 117.)  Holland & Knight and Hindlian continued to represent Inofin, despite knowing that Inofin was raising money from investors without disclosing its dire financial condition and without issuing a PPM in compliance with Regulation D.  (*Id.* ¶ 118.)

In September 2009, the SEC commenced an investigation and issued a subpoena to Inofin.  (*Id.* ¶ 119.)  Holland & Knight represented Inofin in connection with the SEC investigation and subpoena.  (*Id.*)  Holland & Knight allegedly argued to the SEC that the notes

4

issued to investors were not securities, even though Hindlian previously prepared a PPM pursuant to Regulation D for the sale of the same notes.  (*Id.*)

In October 2009, Holland & Knight allegedly "acquiesced" to Inofin issuing 2008 financial statements that failed to reflect Inofin's negative net worth.  (*Id.* ¶ 121.)  In addition, Plaintiff alleges that Holland & Knight failed to ensure that Inofin disclosed the existence of the SEC investigation to investors.  (*Id.* ¶ 122.)

Plaintiffs assert that, because of Holland & Knight and Hindlian's actions and omissions, they rolled over notes that they had purchased from Inofin, reinvested accrued interest in Inofin, and made new investments.  (*Id.* ¶¶ 124, 157.)  On February 9, 2011, a group of Inofin investors filed an involuntary petition for bankruptcy proceedings against Inofin, pursuant to Chapter 7 of the United States Bankruptcy Code.  (*Id.* ¶ 100.)  On February 16, 2011, the United States Bankruptcy Court for the District of Massachusetts appointed a Chapter 7 trustee, who continues to oversee Inofin and its assets.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiffs' Amended Complaint, filed June 28, 2013, asserts fifteen claims for relief. With respect to Holland & Knight and Hindlian, Plaintiff alleges a claim for violations of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Plaintiffs also assert state law claims against Holland & Knight and Hindlian for fraud, negligent misrepresentation, civil conspiracy, breach of fiduciary duty, and violations of the Colorado Securities Act, Colo Rev. Stat. § 11-51-501 *et seq.*

5

Holland & Knight and Hindlian's Motion to Dismiss was filed on September 13, 2013. (*See* Mot. Dismiss.)  They argue that Plaintiff's Section 10(b) claim fails to state a claim for relief and that, in the absence of that claim, the court lacks personal jurisdiction over Holland & Knight and Hindlian.[3]

Pursuant to the mandatory stay provision contained in the Private Securities Litigation Reform Act, 15 U.S.C. § 77z-1(b)(1), the court stayed all discovery and proceedings in this action, with the exception of limited jurisdiction discovery necessary to respond to Holland & Knight and Hindlian's Motion to Dismiss.  (*See* Courtroom Minutes, Doc. No. 51, filed Oct. 2, 2013.)  After receiving an extension of time to conduct such jurisdictional discovery (*see* Minute Order, Doc. No. 59), Plaintiffs' Response was filed on November 12, 2013 (Doc. No. 67) and Holland & Knight and Hindlian's Reply was filed on November 22, 2013 (Doc. No. 72.)

A few weeks after Holland & Knight and Hindlian filed their Reply in Support of their Motion to Dismiss, Plaintiffs filed their Motion to Supplement.  Holland & Knight and Hindlian filed a Response on December 24, 2013 (Doc. No. 78 [Resp. Mot. Suppl.]), and Plaintiffs filed a reply on January 7, 2014 (Doc. No. 79 [Reply Mot. Suppl.]).  Accordingly, this matter is ripe for the court's review and recommendation.

---

[3] Holland & Knight and Hindlian also argue that the court lacks subject-matter jurisdiction in the absence of Plaintiffs' Section 10(b) claim because both Holland & Knight and Plaintiff Triangle River are citizens of Florida for jurisdictional purposes.  However, Holland & Knight and Hindlian overlook the fact that at least one federal question claim remains against other defendants—namely, Sharkansky LLP and Scott Estabrooks.  *U.S. Advisor, LLC v. Berkshire Property Advisors, LLC,* No. 09-cv-00697, 2009 WL 2055206, at *1 (D. Colo. July 10, 2009) ("If complete diversity is lacking, *and no other basis for jurisdiction exists,* the court lacks the power to hear the case.") (emphasis added).

6

## LEGAL STANDARDS

**A.      *Failure to State a Claim upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.

If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Kennedy v. Peele*, ____ F. App'x ____, Case No. 11-cv-00967-REB-KMT,

8

2014 WL 92251, *4 (10th Cir. January 10, 2014).  "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

**B.      *Lack of Personal Jurisdiction***

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person."  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of establishing personal jurisdiction over Defendants.  *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In the preliminary stages of litigation, Plaintiff's burden is light.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists.  *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).  The allegations in Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'"  *Wenz*, 55 F.3d at 1505 (*quoting Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)).  If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.* (citation omitted).  Only well-pleaded facts, as opposed to mere conclusory allegations, must be accepted as true.  *Id.*

9

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).  In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process.  *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992).  Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state."  Colo. Rev. Stat. §§ 13−1−124(1)(a)−(b) (2007).  To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process.  *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966).  Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

## ANALYSIS

### A.   *MOTION TO SUPPLEMENT*

Plaintiffs' Motion to Supplement seeks to supplement their Response to Holland & Knight and Hindlian's Motion to Dismiss with a letter they received from the Colorado Division

of Securities on November 12, 2013.  (Mot. Suppl, Ex. 1.)  That letter states that Holland &

Knight has registered or filed over 75 securities offerings or exemptions from registration.  (*Id.*)

Holland & Knight and Hindlian argue that Plaintiffs' Motion to Supplement should be

denied as untimely because, even though Plaintiffs received the Division of Securities letter three

days after they filed their Response, they nevertheless waited until after Holland & Knight and

Hindlian filed their Reply to seek leave to supplement their Response.  (Resp. Mot. Suppl. at 1-

2.)  While the court agrees that this timing is somewhat suspect, it is not convinced that Holland

& Knight and Hindlian will face any prejudice if the Division of Securities letter is considered.

In their Response to the Motion to Supplement, Holland & Knight and Hindlian argue that,

substantively, the Division of Securities letter has little bearing on whether the court has personal

jurisdiction over them.  So long as the court considers this argument contemporaneously with the

Division of Securities letter, the prejudice to Holland & Knight and Hindlian, if any, is minimal.

Accordingly, Plaintiffs' Motion to Supplement is granted.

**B.     *MOTION TO DISMISS***

**1.     *Failure to State a Claim for Relief***

Holland & Knight and Hindlian appear to concede that, if Plaintiffs state a claim for relief

under Section 10(b) of the Securities Exchange Act, the court has personal jurisdiction over them

because the Securities Exchange Act includes a provision for nationwide service of process.  15

U.S.C. § 78aa; *see also Touchstone Group, LLC v. Rink,* 913 F. Supp. 2d 1063, 1071 (D. Colo.

2012) (citing *Peay v. BellSouth Med. Assistance Plan,* 205 F. 3d 1206, 1212-13 (10th Cir. 2000))

(personal jurisdiction analysis is "less exacting" where a defendant is sued under a statute

providing for nationwide service of process).  Thus, the court first addresses the viability of Plaintiff's third claim for violations of Section 10(b) and Rule 10b-5.

Section 10(b) of the Securities Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5, in turn, identifies certain actions that are prohibited by the statute.  In particular, Rule 10b–5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ."  17 C.F.R. § 240.10b–5.

To state a claim under Section 10(b), a Plaintiff must allege:  (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance." *Adams v. Kindler-Morgan, Inc.,* 340 F.3d 1083, 1095 (10th Cir. 2003).

Under the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub.L. No. 104–67, 109 Stat. 737, a heightened pleading standard applies to the first and third of these elements. *Adams*, 340 F.3d at 1095–96.  In order to overcome a motion to dismiss, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the

12

statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Further, it is not enough for a plaintiff to allege generally that the defendant acted with scienter, as permitted under Fed. R. Civ. P. 9(b). Instead, the plaintiff must, "with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

Plaintiffs allege that Holland & Knight and Hindlian violated Section 10(b) by (1) failing to disclose facts regarding Inofin's financial situation and improper sale of securities; (2) failing to complete the PPM; (3) making false statements to the Massachusetts Division of Banking and the SEC; and (4) by making false statements in an August 21, 2010 email to Robert Downing, on which Plaintiff John Butler was copied. The court addresses these allegations in turn below.

### a.    *Failure to Disclose*

Plaintiffs allege in their Amended Complaint that "Holland & Knight failed to state material facts regarding Inofin's true financial condition, despite knowing that Inofin was an insolvent company." (Am. Compl. ¶ 174.) Similarly, in their Response, Plaintiffs assert that "despite knowing that Inofin had sold and continued to sell unregistered securities to investors in violation of applicable law, [Holland & Knight] took absolutely no action whatsoever." (Resp. at 13-14 (citing Am. Compl. ¶¶ 114-115).)

"When an allegation of fraud [under Section 10(b)] is based upon nondisclosure, there can be no fraud absent a duty to speak." *Cent. Bank of Denver v. First Interstate Bank of*

*Denver,* 511 U.S. 164, 174 (1994) (quoting *Chiarella v. United States,* 445 U.S. 222, 234-35 (1980)).  A duty to disclose only arises "because of a fiduciary or other similar relationship of trust and confidence between [parties].  . . .  Without a duty to disclose, silence cannot be held fraudulent."  *Windon Third Oil & Gas Drilling P'Ship v. FDIC,* 804 F.2d 342, 347 (10th Cir. 1986) (quoting *Chiarella,* 445 U.S. at 228).

As part of their breach of fiduciary duty claim—which is asserted against all defendants collectively—Plaintiffs allege that "Defendants, as fiduciaries of Inofin, [] an entity operating within the zone of insolvency, owed fiduciary duties to the creditors of Inofin."  (Am. Compl. ¶ 265.)  In most if not all states, corporate officers and directors owe a corporation and its shareholders fiduciary duties.  In some states, such as Delaware,[4] when a corporation is in the "zone of insolvency," creditors have standing to invoke those fiduciary duties and bring a *derivative*[5] claim against officers or directors to remedy injuries the creditor suffered as a result of injuries to the corporation.  *In re MS55,* No. 06-cv-01233-EWN, 2008 WL 2358699, at *3 (D. Colo. June 6, 2008) (discussing Delaware law).  However, the court cannot locate, nor have Plaintiffs otherwise identified, any case holding that *outside counsel* to a corporation owes a direct or derivative fiduciary duty to creditors when the corporation is in the zone of insolvency.  Thus, Plaintiffs' breach of fiduciary duty claim does not establish that Holland & Knight and Hindlian owed them an affirmative duty of disclosure.

Otherwise, Plaintiffs' Amended Complaint is devoid of any factual allegations suggesting

---

[4] The court cannot locate any Massachusetts case holding that officers and directors owe creditors a fiduciary duty when a corporation enters the zone of insolvency.
[5] Notably, Plaintiffs fiduciary duty claims are brought directly, not derivatively.

that Holland & Knight or Hindlian owed Plaintiffs a fiduciary, attorney-client, or other similar duty that might require them to affirmatively disclose information to Plaintiffs.  Instead, to the contrary, Holland & Knight and Hindlian had an attorney-client relationship to its client, Inofin, which includes a duty to maintain client confidences.  Mass. R. Prof. C. 1.6(a).  Accordingly, because Plaintiffs have failed to establish that Holland & Knight and Hindlian were under any affirmative duty to disclose, their allegations that Holland & Knight and Hindlian failed to disclose Inofin's financial situation or sale of securities are insufficient to state a claim under Section 10(b).

> **b.** *Failing to Complete the PPM*

Plaintiffs allege that Holland & Knight and Hindlian violated Section 10(b) by "not completing the PPM, even though it was evident that Inofin's activities were violative of SEC rules and regulations, and even though it knew Inofin was raising substantial capital from investors."  (Am. Compl. ¶ 175.)

To "make" a false statement in violation of Section 10(b) and Rule 10b-5, one must possess "ultimate authority over the statement, including its content and whether and how to communicate it."  *Janus Capital Group, Inc. v. First Derivative Traders,* 131 S.Ct. 2296, 2302 (2011).  In *Janus,* the Court held that the defendant, Janus Capital Management ("JCM"), could not be held liable under Section 10(b) for false statements in mutual fund prospectuses filed by Janus Investment Fund, even though JCM allegedly participated in the preparation of those materials.  *Id.* at 2304.  The Court reasoned that "[o]ne who prepares or publishes a statement on behalf of another is not its maker."  *Id.* at 2302.

15

The Court in *Janus* analogized to *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148 (2008), in which the Court rejected a Section 10(b) claim "against companies involved in deceptive transactions, even when information about those transactions was later incorporated into false public statements." *Janus*, 131 S.Ct. at 2303–04 (citing *Stoneridge*, 552 U.S. at 161).  In turn, the *Janus* Court held, "[w]e see no reason to treat participating in the drafting of a false statement differently from engaging in deceptive transactions, when each is merely an undisclosed act preceding the decision of an independent entity to make a public statement."  *Id.* at 2304.

Plaintiffs' own allegations plainly demonstrate that Inofin, rather than Holland & Knight and Hindlian, was the "maker" of the PPM.  More specifically, after providing a draft PPM to Inofin, Cuomo directed Hindlian to "stop work [on the PPM] as Inofin would not proceed with a PPM for the notes it was selling." (Am. Compl. ¶ 113.)  Hindlian acceded to this directive.  (*Id.* ¶ 115.) Thus, because Inofin had "ultimate authority over the [PPM], including its content and whether and how to communicate it," *Janus,* 131 S.Ct. at 2302, Holland & Knight and Hindlian could not be liable under Section 10(b) *even if* the PPM had ultimately been published.  Plainly, *Janus's* holding also precludes Section 10(b) liability for an attorney who *fails* to communicate a statement he lacked client authority to publish.  Accordingly, the court finds that Holland & Knight and Hindlian's failure to complete and publish the PPM is insufficient to state a claim under Section 10(b).

       **c.**       ***Alleged False Statements to the Massachusetts Division of Banking***

Plaintiffs assert that Holland & Knight and Hindlian "made statements" to the

16

Massachusetts Division of Banking that "actively misled regulatory agents and others in an ongoing attempt to keep Inofin afloat." (Resp. at 14.) This is also insufficient to state a claim under Section 10(b).

Plaintiff's only allegations regarding Hindlian's contact with the Massachusetts Division of Banking is that Hindlian "spoke with personnel at the Division of Banks."[6] (Am. Compl. ¶ 103.) First, this vague allegation fails to specify any misleading statement or the reason(s) why it was misleading. 15 U.S.C. § 78u–4(b)(1). Second, Hindlian's alleged contact with the Massachusett Division of Banking was not made in connection with the purchase or sale of securities, *Adams,* 340 F.3d at 1095—instead, it related to Inofin's efforts to renew its license with the Division of Banking (Am. Compl. ¶¶ 102-105). Third, there are no allegations that Plaintiffs knew of and relied on Hindlian's unspecified statements to the Division of Banking. Accordingly, the court finds that Plaintiffs' allegations of Hindlian's unspecified misleading statements to the Massachusetts Division of Banking are insufficient to state a claim under Section 10(b).

### d.    *Alleged False Statements to the SEC*

Plaintiffs assert that Holland & Knight and Hindlian also made "actively misleading statements to the SEC." (Resp. at 14.) However, Plaintiffs' only allegations are that, in September 2009, Holland & Knight "tried to convince the SEC that the investor notes were not

---

[6] Plaintiffs allege that Inofin filed a License Renewal Application that failed to fully account for its negative net worth—although the application conceded that Inofin's financial statements did not comply with Generally Accepted Accounting Principles (GAAP). (Am. Compl. ¶ 105.) In any event, Plaintiffs admit these statements were prepared with the assistance of Defendant Sharkansky LLP, and not Holland & Knight or Hindlian. (*Id.*)

securities" and "insisted that Inofin was not running a Ponzi scheme." (Am. Compl. ¶ 119.)

These vague allegations fail to establish a specific misstatement of fact. 15 U.S.C. § 78u–

4(b)(1). Moreover, Plaintiffs fail to allege that they relied on these allegedly false statements.

*Adams,* 340 F.3d at 1095. To the contrary, Plaintiffs admit that they were kept in the dark of the

SEC investigation, and thus any statements made by Holland & Knight to the SEC, until January

2011. (Am. Compl. ¶ 124.) Accordingly, Holland & Knight's alleged false statements to the

SEC are insufficient to establish liability under Section 10(b).

> ### e.   *August 31, 2010 Email*

In their Response, Plaintiffs assert that "Mr. Hindlian himself communicated directly and

indirectly with Plaintiffs, making incorrect and materially misleading statements, when he knew,

or should have known, that these statements would ultimately be relied on by those investors."

(Resp. at 14.) This assertion appears to be based primarily on an August 31, 2010 email to

Robert Downing, an Inofin investor, on which Plaintiff Butler was copied. [7] (Resp., Ex. C at 1.)

---

[7] Plaintiffs attach several additional exhibits to their Response; however, none of these exhibits include any direct or indirect statements made by Holland & Knight and/or Hindlian to Plaintiffs. Exhibit A is the draft PPM that Plaintiffs admit was never sent to any investors. (Resp., Ex. A.) Exhibit B is an email from Mr. Downing to Hindlian—as discussed *infra,* it does not include any statements made by Hindlian or Holland & Knight. (*Id.,* Ex. B.) Exhibit D is identical to the August 31, 2010 Hindlian email discussed *infra.* (*Id.,* Ex. D.) Exhibit F is an email sent to Inofin's principals and other Holland & Knight attorneys by Hindlian featuring a draft response to Mr. Downing's email. That email and Hindlian's August 31, 2010 email both demonstrate that this response was never sent to Mr. Downing or Plaintiffs. (*Id.,* Ex. F.) Exhibit G is an internal Holland & Knight memorandum authored by Hindlian after the SEC investigation commenced wherein Hindlian concludes that Inofin probably was not a Ponzi scheme. (*Id.,* Ex. G.) Plaintiffs do not allege or assert that memorandum was ever sent to them. Finally, Exhibit H is an email from Daniel Small, a Holland & Knight attorney, to Cuomo featuring a draft communication for dissemination to investors. (*Id.,* Ex. H.) Plaintiffs do not allege or assert that

As a threshold matter, the Amended Complaint does not refer to this August 31, 2010 email in any way.  Accordingly, it is outside of the scope of the materials that may be considered under Rule 12(b)(6).  *See Dubbs*, 336 F.3d at 1201.  However, because Plaintiffs suggest that the court grant them leave to amend their Amended Complaint to add allegations regarding this other communication (Resp. at 19),[8] the court addresses this argument for sake of providing a thorough record to the District Court.

The court finds that, even if Plaintiffs were permitted to amend their Amended Complaint to include allegations regarding the August 31, 2010 email, they would still fail to state a claim for violations of Section 10(b).  *Gohier v. Enright,* 186 F.3d 1216, 1218 (10th Cir. 1999) (leave to amend may be denied on grounds of futility, which is functionally equivalent to failure to state a claim for relief).

First and foremost, Plaintiffs do not point to any specific misleading statement or statements of material fact in Hindlian's August 31, 2010.  In fact, the email contains few, if any, affirmative statements.  Instead, it simply disavows Mr. Downing's understanding of a telephone conversation between Hindlian and Downing that occurred the previous day, August 30, 2010.[9]

---

they ever received this communication.

[8] This request for leave to amend technically violates D.C.COLO.LCivR 7.1(d), which provides that "a motion shall not be included in response or reply to the original motion," but instead must be "made in a separate document."

[9] Setting aside general, boilerplate disclaimers included in Holland & Knight emails, Hindlian's email states:

> Bob [Downing]: I am sorry that you sent me this email, but you did so, and the conclusions you have reached are totally incorrect, and do not reflect our discussion of yesterday at all, which I emphasized to you was a hypothetical discussion, not about Inofin.  For me to provide you with specific client related

(Resp., Ex. C at 1-2.)  Plaintiffs also do not assert or allege that Mr. Hindlian failed to state a material fact necessary to make this disavowal not misleading.

Alternatively, Plaintiffs may be arguing that the Hindlian's false or misleading statements are reflected in Mr. Downing's summary of the August 30, 2010 conversation with Hindlian. (*See id.* at 2.)  However, in the August 31, 2010 email, Hindlian explicitly states that the conclusions Mr. Downing reached in his summary are "totally incorrect."  (*Id.* at 1.)  Thus, the court cannot presume that Mr. Downing's summary accurately reflects any statements Hindlian made in the August 30, 2010 conversation.  Moreover, even if the court could presume that the summary accurately represents Hindlian's statements, Plaintiffs still fail to assert why Hindlian's purported statements, as conveyed by Mr. Downing, were false or misleading.  15 U.S.C. § 78u–4(b)(1).

The August 31, 2010 email also fails to lend support to Plaintiffs' Section 10(b) claim because Plaintiff admit they did not know of the August 31, 2010 email at the time they filed their Amended Complaint.  (Resp. at 6 n.3.)  Plaintiffs could not have relied to their detriment on a communication they only learned of through jurisdictional discovery, well after this lawsuit

---

data about the pending SEC investigation could be a waiver of the attorney client privilege, and against the interests of the client.  Their prior permission for me to speak with you was limited and based on hypothetical cases, not client specific data, and done as a matter of good faith disclosure on our part, and their consent and approval, not as a waiver of any confidential privilege data as exists.  I regret having to be so direct with you at this time.  Please make sure not to send me or any other lawyer at this firm any further emails about this conversation of yesterday that occurred between us on a purely hypothetical basis.  Thank you.

(Resp. Ex. C at 1) (modified to remove unnecessary capitalization).

was filed. *Adams*, 340 F.3d at 1095–96

Altogether, in light of the absence of any allegations regarding any specific false or misleading statements made by Hindlian in the August 31, 2010 email, much less allegations of how Plaintiffs relied on that statement to their detriment, the court finds it would be futile to grant Plaintiff leave to amend to include allegations regarding Hindlian's August 31, 2010 email.

In conclusion, even construed in a light most favorable to Plaintiffs, the court finds that the allegations of the Amended Complaint fail to establish that Holland & Knight and Hindlian violated Section 10(b).  Accordingly, the court finds that Holland & Knight and Hindlian's Motion to Dismiss is properly granted with respect to Plaintiffs' third claim for relief.

### 2.      *Personal Jurisdiction*

Because the court finds that Plaintiffs fail to state a claim under Section 10(b) of the 1934 Act against Holland & Knight and Hindlian, it is improper to apply a more liberal jurisdictional analysis, "since it is the [1934] Act's provision of nationwide service of process that warrants application of a unique jurisdictional analysis in the first place." *Touchstone*, 913 F. Supp. 2d at 1071.  Instead, the court must conduct the more traditional "minimum contacts" analysis to determine whether it has personal jurisdiction over Holland & Knight and Hindlian. *Id.* at 1073-74 (conducting the minimum contacts analysis with respect to Defendants who were not subject to viable claims under the 1934 Act).

Under the minimum contacts standard, jurisdiction can be established in one of two ways. First, specific jurisdiction lies where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to

21

those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).  *See also Burger King,* 471 U.S. at 475 (specific jurisdiction requires that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws").  Second, even if specific jurisdiction is not available, general jurisdiction "lies when the defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996).

### a.      *Specific Jurisdiction*

Plaintiffs argue that the Holland & Knight and Hindlian minimum contacts with Colorado are evinced by (1) Hindlian's August 31, 2010 email, which copied Plaintiff John Butler, a Colorado resident; and (2) Holland & Knight's efforts to assist Inofin in registering as a business authorized to pursue banking in the state of Colorado.  (Resp. at 20-22.)

### 1.      *August 31, 2010 Email*

The court finds Hindlian's August 31, 2010 email is insufficient to support the exercise of specific jurisdiction.  The Tenth Circuit has generally analogized email communications to phone calls and letters, *Shrader v. Biddinger,* 633 F.3d 1235, 1247 (10th Cir. 2011), which "are not necessarily sufficient in themselves to establish minimum contacts," *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir. 1995) (finding that "ten-to-twenty scattered contacts alleged in negotiating a contract" did not constitute minimum contacts).  Importantly, however, emails can be distinguished from letters and phone calls because while "email is directed to

particular recipients, email addresses typically do not reveal anything about the geographic location of the addressee." *Shrader,* 633 F.3d at 1247-48. "Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived." *Id.*

Here, Hindlian has submitted an affidavit stating that "[w]hen he responded to Mr. Downing's email, I was not aware that jbutler@venturainc.com was an email address belonging to a Colorado investor or plaintiff." (Reply, Ex. C.) Plaintiffs attempt to overcome this statement by pointing out that Hindlian had an Inofin Investor List featuring Butler's name and Colorado address, as well as another email authored by Hindlian stating that "Butler [is] part of the Scarzi Group at Rockland Trust I." (Resp. at 8.)

The Scarzi Group at Rockland Trust I, however, is a Massachusetts commercial bank and therefore is of no relevance to whether Hindlian knew Butler was a Colorado resident. (Reply at 4.) Further, the fact that Hindlian had a copy of the Inofin Investor List merely shows that Hindlian *could* have known, with incredible diligence, that one of several individuals copied on the email was a Colorado resident. This falls well-short of demonstrating that Hindlian *knew* at the time that he sent the message to Mr. Downing that Butler was a Colorado resident and therefore purposefully directed the message to Colorado. *Shrader,* 633 F.3d at 1247-48. This is particularly true because Mr. Downing, rather than Hindlian, was responsible for initially copying Butler on the email chain and Hindlian was responding solely to concerns asserted by Mr. Downing.

23

Furthermore, even if the court could find that Hindlian purposefully directed his email to a known Colorado resident, the court's analysis must focus on the quality of contacts, as well as the overall purpose of the parties' efforts. *Klein Frank, P.C. v. Girards,* 932 F. Supp. 2d 1203, 1216 (D. Colo. 2013.) Because the content of Hindlian's email to Mr. Downing responded solely to the concerns of Mr. Downing as an investor in a Massachusetts company, his incidental communication with Butler created only a "random, fortuitous, [and] attenuated" contact with Colorado. *Burger King,* 471 U.S. at 475; *see also Klein Frank, P.C.,* 932 F. Supp. 2d (finding sixty emails and repeated phone calls to Colorado over nearly two years did not establish minimum contacts because they related to representation of a Texas client).

### 2.      *Efforts to Obtain Lender License in Colorado*

Plaintiffs also assert that Holland & Knight and Hindlian have minimum contacts with Colorado because they advised Inofin regarding the need to obtain a lender license in Colorado. (Resp. at 21.) Holland & Knight and Hindlian's efforts in this respect included (1) three phone calls to Colorado regulators (*see* Mot. Dismiss, Ex. B, Decl. of R. Hindlian, ¶ 9); (2) an internal Holland & Knight memorandum discussing whether Inofin should obtain lender licenses in several states, including Colorado (Resp., Ex. K); and (3) two emails to Inofin principals discussing Colorado lender license requirements and regulations (*see* Resp., Ex. J at 11). Plaintiffs also point out that Holland & Knight had in its files a form memorandum from the Colorado Attorney General's office regarding supervised lender licensing requirements. (Resp., Ex. L.)

The court is not convinced that the internal Holland & Knight memorandum, the emails

to Inofin principals, and the Attorney General memorandum demonstrate any contacts with Colorado.  Instead, at best, they indicate that Holland & Knight and Hindlian were researching Colorado licensing regulations and requirements in *Massachusetts.*

Thus, the only actual contacts with Colorado are the three phone calls to Colorado regulators, which lasted less than six minutes combined.  The court finds that these brief investigative contacts fall well-short of rendering it foreseeable that Holland & Knight and Hindlian should reasonably anticipate being haled into court in Colorado.  *Allison v. Wise,* 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).  At best, these contacts are the "random, fortuitous, [and] attenuated" contacts that cannot be used to establish personal jurisdiction.  *Burger King,* 471 U.S. at 475.

Furthermore, these phone calls cannot be used to establish specific jurisdiction because they are not relevant in any way to Plaintiffs' claims.  *Burger King,* 471 U.S. at 473 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)) (specific jurisdiction lies only where the alleged injuries "arise out of or relate" to the defendant's contacts with the forum state).  Plaintiffs' Amended Complaint does not include any reference to Holland & Knight and Hindlian's efforts to obtain a Colorado lender license for Inofin.  Instead, Plaintiffs' allegations revolve entirely around Holland & Knight and Hindlian's contacts with the Massachusetts Division of Banking and the SEC, their preparation and subsequent tabling of the PPM, and their failure to otherwise disclose Inofin's distressed financial situation.  (Am. Compl. ¶¶ 101-124.)

Altogether, because Holland & Knight and Hindlian clearly lack sufficient contacts with

25

Colorado that also relate to the events giving rise to this suit, the court finds that it cannot exercise specific jurisdiction over these defendants.  Further, because Plaintiffs do not assert that the court may exercise general jurisdiction over Hindlian, he is properly dismissed as a defendant for lack of personal jurisdiction.

### b.      General Jurisdiction

Plaintiffs contend that, even if the contacts discussed above do not support specific jurisdiction, the court has general jurisdiction over Holland & Knight.  (Resp. at 22-23.)  The court disagrees.

General jurisdiction requires that a defendant have contacts with the forum "so 'continous and systematic' as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown,* --- U.S. ----, 131 S.Ct. 2846, 2851 (2011).  In other words, general jurisdiction requires ties to the forum state so strong that it is comparable to a domestic enterprise in that state.  *Daimler AG v. Baumann,* --- U.S. ----, 134 S.Ct. 746, 758 n. 11 (2014).  Establishing general jurisdiction is thus a very "high burden."  *Grynberg v. Ivanhoe Energy, Inc.,* 490 F. App'x. 86, 94 (10th Cir. 2012) (not published) (citations omitted).

The Tenth Circuit has relied on various factors to assist in the determination of whether the business contacts of a non-resident corporate defendant are sufficient to exercise general personal jurisdiction, such as: "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business

conducted in the state by the corporation." *Grynberg,* 490 Fed.Appx. at 95 (citing *Kuenzle v. HTM Sport—Und Freizeitgerate AG,* 102 F.3d 453, 457 (10th Cir. 1996) *& Doering v. Copper Mountain, Inc.,* 259 F.3d 1202, 1210 (10th Cir. 2001)).  In addition, courts consider the frequency of a defendant's travel to the forum state, the amount of work a defendant performs in the forum state, and whether a defendant owns property in the forum state.  *Trierweiler,* 90 F.3d 1523, 1544 (10th Cir. 1996)*; see also Soma Medical v. Standard Chartered Bank,* 196 F.3d at 1295 (listing factors as observed by the Utah Court of Appeals).

Although it has offices in a number of states, Holland & Knight has never had an office in Colorado.  (Mot. Dismiss, Ex. A, Decl. of M. Chapman, ¶ 2.)  Further, Holland & Knight does not maintain a Colorado address, telephone number, or bank account, and does not own or maintain any Colorado real property.  (*Id.* ¶ 4.)  While Holland & Knight has processed payroll tax and withholdings in Colorado for four employees in the state—one lawyer, two policy advisors, and one public affair advisor—each of those employees were assigned to either Holland & Knight's Boston or Washington D.C. office and therefore merely telecommuted from their homes in Colorado.  (*Id.* ¶¶ 6-7.)  As of January 2013, Holland & Knight does not have any partners or staff members who reside in Colorado.  (*Id.* ¶ 6.)

Plaintiffs argue that the court may nevertheless exercise general jurisdiction over Holland & Knight because it (1) is registered as a foreign business in Colorado and maintains an agent for service of process in the state; (2) has lawyers who have appeared before courts in Colorado to represent clients, including before this court; (3) has solicited business in Colorado; and (4) has derived approximately $52 million from Colorado clients, including approximately $16 million

for work performed in Colorado.  (Resp. at 22-23.)  The court is not convinced that this is sufficient to establish general jurisdiction.

First, while the fact that a defendant is registered to do business within the state is certainly a relevant factor to the court's exercise of jurisdiction, it is not sufficient on its own to confer jurisdiction.  *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445 (1952) ("The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide helpful *but not a conclusive* test") (emphasis added); *Schreiber v. Allis-Chalmers Corp.,* 611 F.2d 790, 792-93 (10th Cir. 1979) (despite acknowledging that the law of the forum state allowed for jurisdiction because the defendant had a registered agent there, the panel proceeded to analyze whether exercising personal jurisdiction would offend due process); *Allied Carriers Exchange, Inc. v. Alliance Shippers, Inc.,* No 98-WM-2744, 1999 WL 35363796, at *2-4 (D. Colo. Sept. 22, 1999) (rejecting a bright line rule that the designation of a registered agent in Colorado satisfies the Due Process Clause); *Wilson v. Humphrey's (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) ("Registering to do business is a necessary precursor to engaging in business activities in the forum state.  However, it cannot satisfy . . . standing alone . . . the demands of due process.").

Of Holland & Knight's over 1,000 attorneys, only eight have been or are licensed by the Colorado bar, twelve have been admitted to this court or the Tenth Circuit Court of Appeals, and two have been admitted in Colorado *pro hac vice.*  (Resp., Ex. I.)  In any event, however, "admission to practice law in Colorado is insufficient to confer personal jurisdiction."  *Dietz v.*

*Dietz,* No. 11-cv-01692-RBJ-KMT, 2012 WL 1931549, at *3 (D. Colo. May 29, 2012) (citing *Trierweiler,* 90 F.3d at 1543-44 (10th Cir. 1996)).  Moreover, of those admitted, only three Holland & Knight attorneys have conducted work in Colorado for Colorado-based clients since 2005, and only one has appeared in a court in Colorado.  (Chapman Decl., ¶ 8.)  *Cf. Soma,* 196 F.3d at 1296 ("fil[ing] five civil cases in Utah prior to 1992 to recover monies and/or foreclose on trust deeds" were not "the kind of 'substantial and continuous local activity' necessary to subject [a defendant] to general jurisdiction"); *Klein Frank, P.C.,* 932 F. Supp. 2d at 1210 (finding that a single *pro hac vice* appearance in Colorado, even when combined with other contacts, was not sufficient to confer general jurisdiction).

Although Plaintiffs maintain that Holland & Knight solicits business in Colorado, the only evidence they offered of such solicitation is a Response submitted by Holland & Knight to a University of Northern Colorado Request for Proposal.  (Resp. Ex. L.)  Without more, this single proposal falls short of demonstrating that Holland & Knight solicits business in Colorado *on a regular basis.  Grynberg,* 490 Fed.Appx. at 95.

Plaintiffs also argue that letter from the Colorado Division of Securities support the exercise of general jurisdiction.  (Mot. Suppl. at 3, Ex. 1.)  However, the ultimate probative value of the Division of Securities letter is that Holland & Knight filed, on behalf of its clients, an average of just over three security offerings, or exemptions from registration, per year with the Division of Securities.  *Cf. Soma Med. Int'l,* 196 F.3d at 1296 (filing a small number of UCC financing statements and recording several instruments in the forum state as evidence various security interests was not sufficient to establish general jurisdiction).

Finally, Plaintiffs point to Holland & Knight's Colorado-based revenue, which includes $52,453,460.76 from Colorado clients since 2007, of which $16,445,919.82 came from work performed in the state of Colorado. (Resp. at 22-23.)   On their face, these amounts appear substantial.   However, the court's analysis is not guided simply the dollar-value of business conducted in the forum state.   Instead, the court must compare the percentage of revenue Holland & Knight derives from the state to the company's overall national revenue. *Soma Med. Int'l,* 196 F.3d at 1296 (factors for determining general jurisdiction include whether the defendant "generat[ed] a substantial *percentage* of its national sales through revenue generated from in-state customers") (emphasis added); *Ladd v. Research Triangle Inst.,* No. 05-cv-02122-LTB-OES, 2006 WL 2682239, at *7 (D. Colo. Sept. 18, 2006) (no general jurisdiction based on $2 million worth of business in Colorado through 80 projects with Colorado clients because it constituted less than .1% of the defendant's overall national revenue); *Agape Flights, Inc. v. Covington Aircraft Engines, Inc.,* 771 F. Supp. 2d 1278 (finding no general jurisdiction based in part on sales that represented only .04% of the defendant's total gross revenues over the relevant time period); *Hydro Eng'r v. Landa, Inc.,* 231 F. Supp. 2d 1130, 1134 (1.85% of national sales, through an in-state distributor and direct sales, did not constitute a substantial percentage of the defendants' sales).

On a percentage basis, Holland & Knight's approximately $52 million in revenue from Colorado-based clients represents only 1% of its total national revenue since 2007.   More importantly, the approximately $16.5 million in revenue from work conducted in Colorado constitutes only .33% of Holland & Knight's total national revenue.   Thus, while appearing

30

substantial at first blush, Holland & Knight's revenue from Colorado falls well short of representing a *substantial* percentage of Holland & Knight's total national revenue. *Soma Med. Int'l,* 196 F.3d at 1296. *See also Daimler AG,* ---- U.S. ----, 134 S.Ct. at 761-62 (rejecting the notion that general jurisdiction extends to any state in which a company's sales are sizable).

Ultimately, for purposes of determining general jurisdiction, the court is left with the following:  Holland & Knight had a few employees who telecommuted from Colorado, but does not currently have any Colorado-based employees; is registered to conduct business in the state; has a handful of attorneys who are licensed to practice law in Colorado, of whom only a few have actually completed work in the state; responded to one request for proposal in Colorado; has submitted an average of just over three securities filings per year to the Colorado Division of Securities over the past 24 years; and derives around 1% of its national revenue from Colorado-based clients with only .33% of that revenue from business in Colorado.  The court finds that these contacts fail to satisfy the heavy burden required to establish general jurisdiction.  Even when considered together, the court finds that these contacts fall short of the "continuous and systematic" contacts necessary to render Holland & Knight "at home," or effectively a domestic enterprise, in Colorado.  *Daimler AG v. Bauman,* ---- U.S. ----, 134 S.Ct. at 758.  Accordingly, because Plaintiffs have failed to demonstrate a basis for exercising personal jurisdiction over Holland & Knight, the court finds Holland & Knight is properly dismissed as a defendant.

WHEREFORE, for the foregoing reasons, it is

ORDERED that "Plaintiffs' Motion for Leave to Supplement Response and Brief in Opposition to Holland & Knight LLP's and Richard J. Hindlian's Motion to Dismiss" (Doc. No.

76) is GRANTED.  As demonstrate above, the court has considered the November 12, 2013

Letter from the Colorado Division of Securities in determining whether it has personal

jurisdiction over Holland & Knight.  Further, the court respectfully

RECOMMENDS that "Holland & Knight LLP's and Richard J. Hindlian's Motion to

Dismiss Complaint" (Doc. No. 43) be GRANTED and that Holland & Knight and Hindlian be

dismissed as defendants.


## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of July, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge